UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

CHARLOTTE TURPIN,                )
                                 )
                                 ) Civil Action No. 5:04-CV-102-JMH
        Plaintiff,               )
                                 )
v.                               )
                                 )
WAL-MART STORES, INC.            )    **MEMORANDUM OPINION AND ORDER**
                                 )
                                 )
        Defendant.               )
                                 )
                                 )

                **       **       **       **       **

        Before the Court is the defendant's motion for summary judgment [Record No. 10].  The plaintiff responded [Record No. 11] and the defendant replied [Record No. 13].  The Court being sufficiently advised, this matter is ripe for review.

I.      **Factual Background**

        The plaintiff, Charlotte Turpin ("Turpin"), filed the present complaint in state court against the defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), on February 12, 2004.  The defendant removed the action to this Court on the basis of diversity and federal question jurisdiction on March 3, 2004.

        Turpin is a former employee of Wal-Mart who was terminated on June 14, 2003.  On the day of her termination, the plaintiff was fifty years old.  The complaint alleges that the plaintiff was wrongfully terminated and asserts claims for: 1) violation of the

1

Fair Labor Standards Act; 2) Age Discrimination; 3) Intentional Infliction of Emotional Distress; 4) Breach of Contract; and 5) Wrongful Termination/ Retaliation for Seeking Worker's Compensation.

The plaintiff worked for the defendant, Wal-Mart Store No., 719, in Richmond, Kentucky, for almost ten years. From the beginning of her employment with the defendant until 1996, the plaintiff was a janitor, an associate in hardware and cosmetics, and a manager in the pet department.

In 1996, the plaintiff was injured while in the pet department when a dog house fell on her right shoulder. After the injury, the defendant placed the plaintiff on light duty, managing candy and trinkets. About one year later, the shoulder injury required surgery. After surgery, the plaintiff took a leave of absence for one year. The plaintiff filed a workers compensation claim for this injury.

The plaintiff also suffered two other work-related injuries. In 2001, she injured her hip by tripping over a sign and in 2003 she hurt her right shoulder when doormats fell on her. Prior to her termination, the plaintiff was a greeter in the lawn and garden department. For these injuries, Wal-Mart paid for her medical bills, but the plaintiff did not file workers compensation claims.

The plaintiff claims that Debbie Weeks, a Wal-Mart employee who handles with workers compensation claims, harassed the

2

plaintiff by requiring her to make several trips to the pharmacy to fill prescriptions.  Plaintiff claims that when she complained about the "harassment" she was disciplined because she called Ms. Weeks "a SOB".

On the day she was terminated, the plaintiff began her shift at 7:00 a.m.  She testifies that she began to feel like she was going to pass out, so she sat on a stool in the lawn and garden department.  The plaintiff then alleges that Carol Graham, the department manager of the Floral Department, told her to go to the lounge to rest.  Ms. Graham tried to get the plaintiff to use a wheelchair to go to the lounge, but the plaintiff stated she was able to walk using a cart for assistance.  Once in the lounge, the plaintiff alleges that she passed out, but also states in her deposition that she was sleeping.  (Turpin Dep. at 81.)  The plaintiff states that she has a medical condition that causes her heart rate to decrease, causing her to loss consciousness.

On the day she was terminated, the plaintiff alleges that after she awoke, an assistant manager[1] told her to have the pharmacy check her blood pressure and pulse.  The plaintiff asserts that the same assistant manager told the plaintiff to return to work, despite the fact that the plaintiff told the assistant manager she needed to fill out a time adjustment sheet.

---

[1] The plaintiff does not remember the assistant's name and only refers to her as the "black headed manager." (*Id.* at 72.)

3

The plaintiff states that once she returned to work, she was called into the store manager, Roy Switzer's office and her bags and pockets were searched by an assistant manager named Sherry Bryant to "make sure there was nothing that belonged to them." (*Id*. at 82.)   At this time, the plaintiff was terminated for sleeping on the job and escorted off of the property without a ride home.  The plaintiff testified that Sherry Bryant tried to find the plaintiff a ride, but was unsuccessful.  The plaintiff states that the reason she was fired was for not filling out a time adjustment sheet, which was usually filled out in the evening.

Several store managers testified that the plaintiff had several instances of sleeping or being incoherent on the job and the plaintiff does not contest that she fell asleep on at least three occasions while at work.  The defendant never received any customer complaints concerning the plaintiff and the plaintiff had received raises and promotions in the ten years of service.

The plaintiff alleges that prior to her termination, she told Roy Switzer that she had medical problems that caused her to pass out and that the assistant manager knew that the plaintiff had medical problems.  Allegedly due to her behavior at work, Mr. Switzer required the plaintiff to take a drug test on May 31, 2003, that was negative.

The plaintiff claims she had just been released from the hospital three days prior to returning to work on the day she was

4

terminated and was provided a medical excuse from her cardiologist. She received a pacemaker after she was terminated and no longer passes out from her decreased heart rate.

The plaintiff alleges that after her termination, Don Howe, the district manager, promised that she could get her job back once "the problem was corrected." (*Id*. at 85.)  The plaintiff states that she applied for a job at the Berea, Kentucky store, but was not hired because she was "listed as a thief." (*Id*.)

The plaintiff also alleges that during her employment with the defendant, she was required to work during breaks and when she was "off-the-clock."  For instance, the plaintiff claims she worked off-the-clock when she went into the store as a shopper and recognizing her as an employee, customers would ask the plaintiff for assistance.  Additionally, she claims she was asked to work during breaks and lunch hours, but admits that she was always "clocked-in" for those instances. (*Id*. at 101.)

After the defendant filed the current motion for summary judgment, the plaintiff filed a belated motion to amend the complaint to add Family Medical Leave Act ("FMLA") and disability discrimination claims.  The Court denied the motion because the request was severely belated and the plaintiff did not establish good cause for the delay.

## II.    Standard of Review

A grant of summary judgment is proper "if the pleadings,

5

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the Court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson*, 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there

6

is enough evidence to overcome summary judgment.  *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885.

Rule 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Fed. R. Civ. P. 56(e).

The Sixth Circuit has held that if the moving party meets its initial burden and the nonmoving party fails to respond, "its opportunity is waived and its case wagered."  *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).  "Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record."  *Id.*  The court must still "carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party."  *Id.* at 407.  Thus, if the defendant meets its burden in moving for summary judgment on the unopposed issues, then summary judgment would be proper.  *Cacevic v. City of Hazel Park,* 226 F.3d 483, 492 (6th Cir. 2000); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991).

The defendant's initial burden is met simply by "showing 'the

7

absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (*citing Celotex*, 477 U.S. at 323). This burden can be met by showing Plaintiff does not have "evidence to support an essential element of ... her case." *Id.*

III.   **Discussion**

A.   **Did Plaintiff Plead Disability Discrimination or FMLA Claims?**

The plaintiff's response to the defendant's summary judgment motion argues that the plaintiff was discriminated against because of her disability, the heart condition, and that the defendant failed to adequately notify the plaintiff of her rights pursuant to the FMLA. The defendant argues, and the Court agrees, that the plaintiff's complaint does not allege disability discrimination or FMLA claims.

The plaintiff argues there is a sufficient factual basis for both claims because the complaint states that "[o]n June 14, 2003, the plaintiff became ill at work." (Pl.'s Compl. at 1.) It also states that the defendant's actions caused great emotional distress because the store, among other things, "failed to provide appropriate medical attention" and "escorted the plaintiff out of the building and left plaintiff with no way to get home knowing that she was not in a physical condition to leave." (*Id*. at 1-2.) Although the plaintiff does allege that the actions of the

8

defendant discriminated against her because of her age and that the actions were in retaliation for filing workers compensation claims, the complaint fails to allege that the actions of the defendant discriminated against her due to her disability.

While liberal pleading rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," courts have construed the rules to require that the complaint "give the defendant fair notice of the claim and its supporting facts." Fed. R. Civ. P. 8(a); *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). For disability discrimination claims, the Sixth Circuit has specifically stated that "[a]n accusation of discrimination on the basis of a particular impairment provides the defendant with sufficient notice to begin its defense against the claim." *Id*. The plaintiff's scant mention of an illness and references to the defendant's failure to provide medical attention or to secure a ride home for the plaintiff do not place the defendant on notice that the complaint alleges claims for disability discrimination because the complaint never even mentions disability discrimination or an impairment.

As for the FMLA violation, the complaint does not mention state any facts that would support a FMLA cause of action, nor does it even mention the FMLA. The response to summary judgment is the first pleading wherein the plaintiff asserts that the defendant

failed to provide information about FMLA leave.  Accordingly, the Court finds the complaint did not state a cause of action for FMLA as the defendant was not adequately on notice that the claim was a possibility.

Thus, the plaintiff's assertions that the defendant's actions violated FMLA and disability discrimination laws are unpersuasive because the Court earlier refused to permit the plaintiff's belated attempt to amend her complaint and because the complaint does not state these claims.

**B.   FLSA Claims**

The plaintiff's complaint alleges that "while at her employment with the defendant, the plaintiff was required to work in violation of the Federal Wage and Hour Acts in that the plaintiff was frequently required to work during breaks." (Pl.'s Compl. at 2.)

The defendant argues that summary judgment should be granted on the FLSA claims because the plaintiff can not provide sufficient evidence to support her claims.  The defendant asserts that the plaintiff testified that she would be asked to work during breaks, but also testified that she was always compensated for any time worked on breaks, including meal breaks.  The plaintiff also testified that when she was "off-duty" and patronizing the store as a customer, other customers would recognize her and ask her to assist them in finding merchandise.  The defendant argues that

10

summary judgment should be granted on these claims because the FLSA does not require that breaks or meal periods be given.  Further, the defendant asserts that the plaintiff can not allege a claim for the time she worked "off-duty" without compensation because the defendant was not made aware that she was working "off-duty."

The plaintiff did not respond to the arguments the defendant asserts in the motion for summary judgment.  Because the plaintiff does not adequately respond to the defendant's arguments, summary judgment will be granted, provided the Court determines that the defendant meets the initial burden of "showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street*, 886 F.2d at 1479 (*citing Celotex*, 477 U.S. at 323); Fed. R. Civ. P. 56(e); *Cacevic*, 226 F.3d at 492. This burden can be met by showing Plaintiff does not have "evidence to support an essential element of ... her case." *Street*, 886 F.2d at 1479.

The FLSA provides that employers must pay overtime wages for "hours worked" that are in excess of forty hours.  29 U.S.C. § 207 *et seq*.  A "bona fide meal period" is not included in "hours worked" unless the employee is "required to perform any duties," or is "not completely relieved from duty."  29 C.F.R. § 785.19(a); *Herman v. Palo Group Foster Home, Inc.*, 976 F. Supp. 696, 702 (W.D. Mich. 1997) (holding that pursuant to FLSA, "meal periods during which the employee is not relieved of duty and free to leave his or

11

her post, are also compensable"); *Rushing v. Shelby County Gov't*, 8 F. Supp. 2d 737,745 (W.D. Tenn. 1997)(finding time spent by firefighters during meal breaks should be compensated because the employees were required to stay on-site, take emergency calls, and listen to the radios); *Nelson v. Waste Mgmt of Alameda County, Inc.*, No. C 99-0120 SL, 2000 WL 868523, at *3 (N.D. Cal. June 19, 2000) (citing 29 C.F.R. § 785.19) (unpub.); *Brock v. Claridge Hotel & Casino*, 664 F. Supp. 899, 907 (D.N.J. 1986) (hereinafter*, Claridge Hotel*) (discussing when breaks should be compensated) (supp'l. op'n.).

The FLSA "does not require that an employer provide meal or rest periods." *Nelson*, 2000 WL 868523, at *3. Thus, because the plaintiff admits that she was compensated for the time she spent working during her breaks, including the meal breaks, the plaintiff's FLSA claim for working during breaks fails.

The plaintiff's FLSA claim for not being compensated during "off-time" while she was in the store as a customer similarly fails. Pursuant to the FLSA, "work" is defined as "'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Brock v. City of Cincinnati*, 236 F.3d 793, 801 (6th Cir. 2001) (hereinafter, *Brock*)(quoting *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)); *Chao v. Tradesmen Int'l, Inc.*, 310

12

F.3d 904, 907 (6th Cir. 2002).  "[W]ork performed off-duty can qualify as work and entitle an employee to compensation under the FLSA." *Brock*, 236 F.3d at 801.

In order to determine whether off-duty activity is work that must be compensated, the Court must determine: 1) whether the employer required the employee to perform the duties; 2) whether the off-duty effort was pursued necessarily and primarily for the benefit of the employer; and 3) whether the off-duty effort was an integral and indispensable part of the principal activities which the employees were employed. *Id*.

In the present case, the defendant met its initial burden in moving for summary judgment by showing that it was never made aware of the off-duty assistance the plaintiff provided to customers, nor did it require such assistance.  The plaintiff, on the other hand, has not met its burden in overcoming summary judgment because she presented no evidence that the defendant required the plaintiff to answer customers' questions or to assist customers while the plaintiff was "off-duty" and merely shopping in the store.  Nor has the plaintiff presented any evidence that the plaintiff's time assisting customers while off-duty was primarily for the benefit of the defendant.  Further, the plaintiff did not show the Court how the off-duty effort was an integral part of the activities for which she was employed.

Accordingly, the Court grants summary judgment to the

defendant on the FLSA claims.

### C.   Age Discrimination Claim

The plaintiff alleges that "the defendant's wrongful termination of the plaintiff is actionable because [D]efendant's actions constituted age discrimination." The complaint also alleges that the defendant's age discrimination was a significant factor "in motivating the defendant to discharge the plaintiff." (Pl.'s Compl. at 2.)

The defendant argues that the plaintiff's age discrimination claim fails because the plaintiff can not establish a prima facie case of discrimination. The defendant also argues that the plaintiff can not show that the legitimate reason for termination, sleeping on the job, is pre-textual.

Although the plaintiff's complaint is unclear as to whether the age discrimination claim is asserted pursuant to federal or state law, the *McDonnell-Douglas* burden shifting standard applies. *Harker v. Fed. Land Bank*, 679 S.W.2d 226, 229 (Ky. 1984); *Stewart v. Univ. of Louisville,* 65 S.W.3d 536, 539 (Ky. Ct. App. 2001).

Pursuant to the *McDonnell-Douglas* standard, if the plaintiff does not have direct evidence of discrimination, it is the plaintiff's burden to show: 1) that she was a member of a protected class; 2) that she was discharged; 3) that she was qualified for the position she held; and 4) that she was replaced by a younger

14

worker.[2]  *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547 (6th Cir. 2004).

Once the plaintiff establishes a prima facie case, "the burden shifts to the defendant, who must give legitimate, non-discriminatory reasons for the adverse employment decision." *Id.* "If they do so, the burden shifts back to the plaintiffs, who must establish that the legitimate reasons offered by the defendant were just a pretext for decisions actually motivated by an unlawful bias against age." *Id.*

The defendant only challenges two of the four prongs of the prima facie case, including whether the plaintiff was qualified for the job and whether the plaintiff was replaced by a younger worker. First, as to qualification, the defendant argues that the plaintiff's inability to stay awake on the job makes her unqualified for the position. Next, the defendant submitted evidence that the plaintiff's replacement was several years older than the plaintiff. (Bryant Dep. at 12). Bryant testified that Luanda Benton was the lawn and garden greeter after the plaintiff was terminated. The plaintiff was fifty years of age on the date of her termination and Ms. Benton was in her late sixties or early seventies. (*Id.*)

In response to the defendant's argument that the plaintiff's

---

[2]  In reduction in workforce cases, the forth prong is modified, but the plaintiff has never alleged that the termination involved a reduction in workforce.

replacement was not younger than the plaintiff, the plaintiff argues that a temporary replacement does not qualify as a replacement for purposes of the prima facie case. Citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003).

The Court agrees that a temporary replacement is not considered a replacement, however, the plaintiff's claim still fails because she did not submit *any* evidence that the replacement was indeed younger. The defendant met its initial burden in moving for summary judgment by showing that the plaintiff does not have "evidence to support an essential element of ... her case." *Street*, 886 F.2d at 1479 (citing *Celotex*, 477 U.S. at 323). Thus, summary judgment is proper on the plaintiff's age discrimination claim because she fails to establish the fourth prong of the prima facie case. *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 588 (6th Cir. 2002) ("On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell-Douglas* inquiry.").

Because the Court finds that the plaintiff has failed to present evidence that her replacement was younger, it is unnecessary to determine whether the plaintiff was qualified for the job. Further, because the Court finds that the plaintiff can not survive summary judgment because she has failed to establish the existence of a material fact in dispute as to at least one prong of the prima facie case, it is also unnecessary to decide the

16

remainder of the *McDonnell-Douglas* standard.

**D.   Intentional Infliction of Emotional Distress**[3] **Claims**

The plaintiff's complaint alleges that on June 14, 2003, the day the plaintiff was terminated, "the defendant recklessly made or intentionally inflicted on the plaintiff great and severe emotional distress."  (Pl.'s Compl. at 1.)   The defendant's alleged acts include the following:

    a)   failed to provide appropriate medical attention;
    b)   wrongfully and unlawfully searched plaintiff and her possessions;
    c)   wrongfully terminated plaintiff's employment;
    d)   escorted the plaintiff out of the building and left plaintiff with no way to get home knowing that she was not in a physical condition to leave; and
    e)   prior to that date had wrongfully required the plaintiff to undergo drug and alcohol testing.

(*Id.* at 1-2.)  The plaintiff's response omits the mention of drug testing and instead of "wrongful termination" states that the defendant's behavior in telling the plaintiff to "return to work rather than first filling out a time adjustment form then firing her for the alleged reason that she had not checked out" was outrageous.  Also, the plaintiff's response argues that "[m]aking her fight for unemployment benefits" was outrageous.  (Pl.'s Resp. at 9.)

The defendant argues the plaintiff's claims for emotional

---

[3] Kentucky courts also refer to this tort as outrage.  *See Craft v. Rice*, 671 S.W.2d 247, 250-51 (Ky. 1984).

17

distress fail because they are preempted by statutory remedies[4] and, alternatively, that the allegations do not rise to the level of extreme conduct required by Kentucky law to prove a claim for emotional distress.  The plaintiff does not respond to any of the specific arguments or evidence presented by the defendant.  She merely lists the above allegations and states that they meet the requirement of outrageous conduct.

In order to prove a claim for emotional distress in Kentucky, the plaintiff must show that: 1) the conduct of the defendant is intentional or reckless; 2) the conduct is outrageous in that "it offends against the generally accepted standards of decency and morality"; 3) a causal connection between the defendant and the emotional distress is present; and 4) the distress is severe. *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990). Liability should only be found when "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id*. at 3; *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004) (collecting cases and stating that Kentucky courts "have set a high threshold for IIED/outrage claims").

---

[4] Because the Court finds that none of the allegations are sufficiently outrageous, it is unnecessary to determine whether the claims for intentional infliction of emotional distress are preempted by the plaintiff's other claims for discrimination and retaliation.

Assuming the facts in the plaintiff's favor, the Court finds that none of the allegations are "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Sietz*, 796 S.W.2d at 3.   For instance, the first allegation, that the defendant did not provide medical attention, is not sufficiently outrageous because the plaintiff admits that an employee of the defendant took the plaintiff to the store's pharmacy to check her blood pressure and pulse.   (Turpin Dep. at 72.)   Further, the plaintiff testified that after she woke up, she felt fine to go back to work, (*Id.* at 89), and did not see a doctor until the next day (*Id.* at 88).   Thus, a reasonable jury could not find the defendant's conduct outrageous.

Plaintiff's second allegation that she was unlawfully searched upon termination and prior to leaving the building also fails.   The plaintiff alleges that the defendant asked her to empty her pockets, which she did herself, and a store employee watched while the plaintiff "went through everything" in her backpack.   (*Id.* at 81-82.)   The plaintiff admits that the defendant's stated reason for the search was to find company property.   (*Id.* at 81.)   The plaintiff never testified that she was hurt or touched inappropriately.   Additionally, the handbook, signed by the plaintiff, clearly states that "[w]hen you leave, all Company charge and discount cards, name badges, and other Company property

must be returned to your Supervisor at the time of separation."
(Def.'s Mot. for Summ. J., Ex. B.)  A reasonable jury could not
find that searching the plaintiff in the manner she asserts it was
accomplished, was so outrageous that it would be regarded as
atrocious behavior.

Plaintiff's third allegation is that an employee of the
defendant told the plaintiff that she must return to work without
filling out a time adjustment, but the plaintiff was fired for not
filling out such an adjustment.  Assuming these facts as true, the
plaintiff's allegation, while upsetting, is not so offensive as to
offend common decency, especially in light of the fact that the
plaintiff's employment status was at-will and she could be fired at
any time, for any reason.  *Stringer*, 151 S.W.3d at 792 (holding
that the defendant/store manager's conduct was not outrageous in
manufacturing an excuse to fire the plaintiffs to save his own
job); *Gen. Accident Ins. Co. v. Blank*, 873 S.W.2d 580, 582 (Ky. Ct.
App. 1993) (stating that "*Craft* [the case establishing the tort of
emotional distress] is distinguishable from a situation involving
a mere termination").

The fourth and fifth allegations also fail.  Plaintiff claims
that on the day the plaintiff was terminated, the defendant
escorted her out of the building without securing a ride for her,
even though the defendant's employees knew she was ill.  A
reasonable jury could not find this conduct outrageous because the

20

plaintiff admits that a store employee tried to find the plaintiff a ride home, to no avail. (Turpin Dep. at 84.) The plaintiff also testified that after waking she felt fine to return to work. (*Id.* at 89.)

The plaintiff's fifth allegation is that the defendant wrongfully required the plaintiff to undergo drug testing. This conduct is not outrageous because the plaintiff was apprized of the store's anti-drug policy and in light of the fact that the plaintiff admits that she had fallen asleep at work on numerous occasions, (*Id.* at 57), a reasonable jury could not find that requiring the plaintiff to take a drug test was outrageous behavior.

Finally, the plaintiff's allegation that the defendant made "her fight for her unemployment benefits" also does not constitute outrageous behavior. *See Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340, 344 (Ky. 1986) (holding that employee did not have a cause of action for outrage for delaying payment of workers compensation benefits).

Based on the above, the Court finds that none of the plaintiff's allegations are sufficiently outrageous to warrant claims for emotional distress under Kentucky law. Therefore, summary judgment is warranted on these claims.

### E. Breach of Contract Claims

The plaintiff's complaint alleges that the defendant is liable

for breach of contract "by failing to accord the plaintiff the rights provided in the employee handbook.  Said handbook, representations by the defendant, and Wal-Mart practices are such that a contract of employment is created."  (Pl.'s Compl. at 2.)

The defendant argues that summary judgment should be granted for this claim because the plaintiff was admittedly an at-will employee, (Turpin Dep. at 30), that could be terminated for good cause or no cause.  Further, the defendant adds that the plaintiff can not establish that the at-will contract was altered because Kentucky law requires clear intent to alter.

The plaintiff's response does not respond to the defendant's arguments concerning the breach of contract claim.  In the facts section of the response, the plaintiff alleges that the district manager, Don Howe, orally promised her that she could re-apply "once I got my heart fixed" but that upon applying with the Berea, Kentucky store, she was not hired due to being "listed as a thief." (*Id*. at 19 & 85, respectively.)  As noted *infra*, because the plaintiff did not respond to the defendant's arguments by setting forth evidence to meet her burden in responding to summary judgment, the defendant's motion as it regards the breach of contract claims will be granted if the defendant meets its initial burden in showing that the plaintiff does not have "evidence to support an essential element of ... her case."  *Street*, 886 F.2d at 1479.

22

The Court finds that the defendant has met its burden in moving for summary judgment.  The plaintiff admits that she was not employed pursuant to a contract for a specific term.  (Turpin Dep. at 30.)   Therefore, the defendant could have terminated the plaintiff "for good cause, for no cause, or for a cause that some might view as morally indefensible."  *Firestone Textile Co. v. Meadow*s, 666 S.W.2d 730, 731 (Ky. 1983); *Northeast Health Mgmt., Inc. v. Cotton*, 56 S.W.3d 440, 446 (Ky. Ct. App. 2001) (*accord*); *Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 491 (Ky. 1983) ("employment for an indefinite period of time may be terminated by either party at will").

Although the parties may alter the at-will status of employment, clear intent must be shown to alter.  *Shah*, 655 S.W.2d at 492.  The defendant argues, and the Court agrees, that the at-will contract was never altered, even assuming all the plaintiff's facts.  For instance, assuming that Don Howe did promise the plaintiff that she could re-apply once the problem with her heart was remedied; this alone is insufficient to alter the at-will status.  *See Id*. ("parties may enter into a contract of employment terminable only pursuant to its express terms --as 'for cause'-- by clearly stating their intention to do so").

Additionally, the plaintiff's assertion in the complaint that a breach occurred because the defendant failed to accord rights provided in the employee handbook also fails for lack of a showing

of intent by the defendant to alter the at-will status of plaintiff's employment. The defendant submitted the handbook acknowledgment that was admittedly signed by the plaintiff which clearly states that "[t]he policies and benefits presented in this handbook are for your information and do not constitute terms or conditions of employment. This handbook is not a contract." (Def.'s Mot. for Summ. J., Ex. 4.) The plaintiff provided no evidence that the handbook or representations by the defendant created an altered status. Therefore, the Court finds that summary judgment is proper on the plaintiff's breach of contract claim.

**F.   Retaliation for Workers Compensation Claim**

The plaintiff alleges that "the defendant's wrongful termination of the plaintiff is actionable because [D]efendant's actions constituted ... discrimination because the plaintiff was entitled to receive workers' compensation benefits." The complaint also states that the discrimination was a significant factor "in motivating the defendant to discharge the plaintiff." (Pl.'s Compl. at 2.)

The plaintiff testified to three on-the-job injuries that occurred during her employment at Wal-Mart. First, she was injured in 1996 when a doghouse fell on her right shoulder. The plaintiff filed a workers compensation claim for this injury. In 2001 she was injured when she tripped over a sign and in 2003 doormats fell on her right shoulder, re-injuring it. The testimony indicates

24

that while the defendant paid for her medical bills for the latter two claims, no workers compensations claims were filed.

The defendant argues that summary judgment should be granted on the workers' compensation retaliation claim because the plaintiff has submitted insufficient proof of harassment[5] and causation.

The plaintiff responds that she suffered harassment from the store's employee in Arkansas, Debbie Weeks, that made her make three trips to the pharmacy each time she required medicine. When she complained about this treatment to a member of the pharmacy, she was disciplined by a written reprimand for admittedly calling Debbie Weeks "a SOB." The plaintiff states that while the district manager, Don Howe, made four calls to remedy the situation, the harassment was only eased momentarily and continues to today. The plaintiff argues that this is sufficient evidence that the discharge was related to her workers compensation claim.

The plaintiff pursues this claim pursuant to KRS § 342.197 that provides that "[n]o employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter."

---

[5] The Court construes the complaint to only assert one claim for workers compensation retaliation. The plaintiff's complaint does not set forth a separate claim for harassment, nor does the complaint set forth facts in the complaint from which a separate claim for harassment could be found. Fed. R. Civ. P. 8(a). Thus, the Court subsumes the plaintiff's submission of evidence of harassment into her retaliation discharge claim.

25

In order to prove the plaintiff was discharged in retaliation for filing a workers compensation claim, she must "provide evidence she (1) 'engaged in statutorily protected activity,' (2) was discharged, and (3) 'there was a connection between the protected activity and the discharge.'" *Henderson v. Ardco, Inc.*, 247 F.3d 645, 654 (6th Cir. 2001) (quoting *Willoughby v. Gencorp, Inc.*, 809 S.W.2d 858, 861 (Ky. Ct. App. 1990)). The last element "requires a showing that the claim was a 'substantial and motivating factor but for which the employee would not have been discharged.'" *Id.* (quoting *First Prop. Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993)).

The defendant argues, and the Court agrees, that the plaintiff has not presented sufficient evidence to prove that the discharge was a substantial and motivating factor but for which the employee would not have been discharged. The only proof connecting the discharge and workers compensation benefits is the fact that the plaintiff was disciplined for complaining to the pharmacy about the difficulties she incurred in obtaining prescriptions. The plaintiff admits in her deposition that she "called Debbie Weeks a SOB" to the pharmacists. The written reprimand resulting from this incident is noted on the termination sheet as a reason not to rehire, but the stated cause for termination is that the plaintiff slept while on the clock. The plaintiff introduced no other evidence, other than mere speculation, of any causal connection

26

between the discharge and her workers compensation claim.

Thus, summary judgment is proper on this claim.

**IV.     Conclusion**

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that the defendant's motion for summary judgment [Record No. 10] be, and the same hereby is, **GRANTED**.

This the 19th day of May, 2005.



**Signed By:**

**_Joseph M. Hood_**

**United States District Judge**

27